U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 0 2 2009

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| MARK HANNA<br>　LA. DOC #132872 | DOCKET NO. 08-CV-1230; SEC. P |
| VERSUS | JUDGE DEE D. DRELL |
| DELMER MAXWELL, ET AL. | MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION

Pro se plaintiff Mark Hanna, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 19, 2008. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he is currently incarcerated at the Richland Parish Detention Center in Rayville, Louisiana; however, he complains of a wrongful conviction of a disciplinary rules violation, which resulted in the forfeiture of "good time" credits and the imposition of other sanctions, while he was incarcerated at the Winn Correctional Center (WCC) in Winnfield, Louisiana in January 2003.

Plaintiff sued WCC Corrections Officers Delmer Maxwell and Jane Womack, WCC Wardens Tim Wilkinson and Todd Thomas, WCC personnel Mona Heyse and Lionel Telsee, and former LDOC Secretary Richard Stalder and his assistant, Linda Ramsey. He prayed for an unspecified amount of compensatory and punitive damages.

### Statement of the Case

In January 2003, while Plaintiff was incarcerated at WCC, he

was charged with the disciplinary rules violation of "Defiance" by Defendant Telsee after Plaintiff refused "invasive" medical treatment and threatened to file a lawsuit. [Doc. #1, ¶7] Plaintiff was convicted of the violation on February 3, 2003 by the WCC Disciplinary Board, made up of Defendants Maxwell and Womack. Plaintiff was ordered to serve 10 days in isolation and to forfeit 180 days of accumulated "good time" credits.

Plaintiff claims that the Defiance conviction ultimately prolonged his period of incarceration by ninety days. He complains that he was forced to endure isolation from the general prison population in an cell without a mattress for 16 hours per day for a total of 10 days. He also experienced the loss of commissary and recreation privileges for those 10 days. [Doc. #1, ¶8]

Plaintiff timely appealed the disciplinary conviction to Warden Wilkinson (Case No. WNC 2003-54), claiming that there was "... no written or established prison disciplinary rule for Louisiana inmates prohibit[ing] them from refusing invasive medical treatment or from verbally threatening to sue prison officials, and that those activities are federally (constitutionally) protected from being the object of disciplinary proceedings and punishments."[Doc. #1, ¶11-13] On February 25, 2003, the Warden denied the appeal. [Doc. #1, ¶12 & Doc. #26, p.7]

Plaintiff then appealed the Warden's decision to the DOC Secretary by submitting the appeal to the Warden's office via

2

intra-prison mail. Defendants Wilkinson, Thomas, and Heyse refused to forward the appeal to the Secretary because they determined that it was not timely submitted. [Doc. #26, p.7]

Sometime in July 2003, Plaintiff timely filed a petition in Louisiana's Nineteenth Judicial District Court seeking judicial review of the disciplinary conviction, as well as damages. The Court determined that Plaintiff's claim for damages was not properly before the court, and that claim was dismissed. However, Plaintiff's appeal of the disciplinary conviction was directed to the Commissioner's Office for review. [Doc. #1, ¶16-18 & Doc. #26, p.4] Before Plaintiff's appeal was heard by the Commissioner, he was released on "good time" parole. See <u>Mark Hanna v. Louisiana Dept. of Public Safety and Corrections, et al.</u>, 2007 WL 466750. Therefore, his appeal was dismissed without prejudice as moot. The judgment specifically stated that, **should Petitioner's parole be revoked,** he had thirty days to re-file his appeal. [Doc. #26, p.6]

Petitioner's parole was, in fact, revoked on March 15, 2006, and he did timely re-file the appeal. The DOC filed a motion to dismiss for failure to exhaust administrative remedies, arguing that Plaintiff had not timely submitted his administrative appeal to the Secretary. The Nineteenth Judicial District Court, however, determined that Plaintiff's administrative appeal *had* been timely and properly "submitted" to the Secretary, via the warden, by placing it in the intra-prison mail. Therefore, on August 20,

3

2007, the Commissioner of the Nineteenth Judicial District Court recommended dismissal of Plaintiff's case without prejudice, but with a specific Order that the DOC Secretary accept Plaintiff's 2003 appeal as timely filed, consider the appeal, and render a decision within twenty days. [Doc. #26, p.10] A judgment was signed to that effect by the district judge. [Doc. #26, p.11]

On August 28, 2007, the Secretary granted Plaintiff's appeal, finding that there had been insufficient evidence for the Defiance conviction back in 2003. Thus, Plaintiff's disciplinary conviction was expunged. [Doc. #26, p.12]

As to the reinstatement of Plaintiff's "good time" credits, the Secretary issued an Amended Response on September 20, 2007, noting that the Defiance conviction occurred during Plaintiff's *previous* period of incarceration, from which Plaintiff had been paroled. Because Plaintiff's "good time" parole was revoked due to his felony conviction, Plaintiff's original sentence was reinstated and Plaintiff had to serve out the remaining part of that sentence. **So, the forfeiture of "good time" caused Plaintiff to serve an extra 90 days during the prior period of incarceration before being released on parole.** [Doc. #1, ¶8 & Doc. #26, p.13] **But, those ninety extra days were counted toward the remainder of the sentence that Plaintiff had to serve once his parole was revoked.** The Secretary's amended response also notes that the violation for which Plaintiff was convicted, which caused the parole revocation,

4

was a felony (Second Degree Battery) and Plaintiff's second crime of violence. Therefore, Plaintiff was ineligible for good time upon his return to prison. [Doc. #26, p.13]

### *Law and Analysis*

Plaintiff has claimed that the defendants violated rights guaranteed to him by the First (freedom of speech), Fourth (right to privacy), and Fourteenth (substantive due process) Amendments to the United States Constitution through the defiance conviction and ensuing sentence. He contends that the duration of his imprisonment was prolonged by 90 days and that he was confined in isolation with a loss of various privileges for a period of 10 days. [Doc. #1, ¶34-37] Plaintiff seeks compensatory or "pecuniary" damages "... in vindication of the wrongful, unconstitutional, prolonged imprisonment and intensified confinement imposed upon..." Plaintiff. [Doc. #1, ¶38-39]

Plaintiff does not complain about the actual "process" or procedures used in the prison disciplinary proceedings that led to his Defiance conviction. He admits that he did the acts alleged - he refused an "invasive" medical procedure and threatened to sue the defendants. [Doc. #1, ¶26] His argument is that his actions were constitutional based on his rights to privacy, freedom of speech, and substantive due process under the Fourth, First, and Fourteenth Amendments; and, by his disciplinary conviction and sentence, those rights were violated.

5

Inmates are entitled to protection under the Due Process Clause when an official action infringes upon a *constitutionally protected liberty interest*. There is no constitutionally protected liberty interest in conditional release before the expiration of a valid sentence, <u>Greenholtz v. Inmates of the Neb. Penal & Correctional Complex</u>, 442 U.S. 1, 7 (1979), nor does the Constitution guarantee and inmate "good time" credit for satisfactory behavior while in prison, <u>Madison v. Parker</u>, 104 F.3d 765, 768 (5th Cir. 1997). Therefore, Plaintiff's claim rests on the existence of an interest created by state law.

Only those state-created substantive interests that **"inevitably affect the duration of [a prisoner's] sentence" may qualify for constitutional protection under the Due Process Clause**. <u>Sandin v. Conner</u>, 515 U.S. 472, 487 (emphasis added); see <u>Orellana v. Kyle</u>, 65 F.3d 29, 31-32 (5th Cir. 1995). In this case, the duration of Plaintiff's sentence was **not** affected. Because he violated parole, Plaintiff ended up being required to serve the entirety of the original sentence, including the ninety days at issue. So, while those ninety days were "extra" **before** being released on parole, they were no longer "extra" once his parole was revoked. They simply counted toward the total number of days he had to serve on the original sentence, and Plaintiff received credit for those days against the original sentence. Plaintiff is serving the very term of imprisonment that he was initially

sentenced to serve. His sentence was ultimately **not** lengthened by the Defiance sentence. Plaintiff cannot demonstrate that his disciplinary conviction violated his constitutional right to due process because there was no infringement upon his constitutionally protected liberty interests.

Additionally, since Plaintiff was arrested and convicted of another felony offense while on "good time" parole, it is likely that all of the good time credits he had accumulated prior to his release on parole were forfeited anyway.[1] Moreover, the conviction that triggered the parole revocation was Plaintiff's second crime of violence, felony Second Degree Battery, which rendered Plaintiff ineligible for good time upon his return to prison. [Doc. #26, p.13] Based on the forgoing, it is unlikely that the good time credits forfeited as a result of the complained of disciplinary proceedings could have been restored anyway.

As discussed above, the alleged constitutional violations did **NOT** inevitably affect the duration of Plaintiff's sentence because Plaintiff's parole violation resulted in him having to serve the full term of his sentence, without good time. Plaintiff is not having to serve the original sentence *plus* ninety days; the ninety days are included in the period of incarceration under the original

---

[1] See La. R.S.15:571.4(B)(2) which provides, "An inmate who has been returned to the custody of the department because of a violation of the terms of parole granted by the Board of Parole <u>shall forfeit all good time earned on that portion of the sentence served prior to the granting of parole</u>."

7

sentence.

Plaintiff also complains that his constitutional rights were violated by having to spend 10 days in segregation where he was denied the use of bedding and a mattress for 16 hours per day, and through the loss of his commissary and recreation privileges. Segregated confinement is not grounds for a due process claim unless it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See Sandin v. Conner, 515 U.S. 472, 484 (1995). Cases where segregated confinement is sufficiently "atypical" to implicate a due process liberty interest involve circumstances much harsher than those presented here.[2] Plaintiff's ten day period of commissary and recreational restrictions and ten days in isolation with use of a bed and mattress for only 8 hours each night are not atypical or significant as compared to ordinary incidents of prison life. The facts alleged by Plaintiff are more comparable to, if not less severe than, those found unactionable in other cases. See Hernandez

---

[2]In Wilkerson v. Stalder, the Fifth Circuit held that due process might have been violated where the plaintiffs had been kept on lockdown status for 30 years. Wilkerson v. Stalder, 329 F.3d at 436 (remanding for determination whether such confinement was "atypical" under Sandin). In another case, the Supreme Court held that transfer to the Ohio "Supermax" facility implicated a liberty interest, in part because conditions there were "more restrictive than any other form of incarceration in Ohio." Wilkinson v. Austin, 545 U.S. 209, 214 (2005). The Court noted that at the Supermax facility, almost all human contact is prohibited: inmates are kept in single cells with solid metal doors, eat alone in their cells rather than in a common area, and spend 23 hours a day alone in their cells, where a light remains on at all times. Id. at 223-24. These conditions and others were sufficiently extraordinary that the Supreme Court concluded prisoners had a liberty interest in avoiding assignment to the Supermax facility. Id.

v. Velasquez, 522 F.3d 556, 563 (5th Cir. 2008)(no due process claim where inmate confined to a shared cell for twelve months with permission to leave only for showers, medical appointments, and family visits); Harper v. Showers, 174 F.3d 716, 717 (5th Cir. 1999)(no due process claim where inmate claimed he was placed in lockdown "in cells next to psychiatric patients who scream, beat on metal toilets, short out the power, flood the cells, throw feces, and light fires;" was often "moved into filthy, feces-smeared cells;" and was deprived of "cleanliness, sleep, and peace of mind."); Martin v. Scott, 156 F.3d 578, 579 n. 1, 580 (5th Cir. 1998)(segregated prisoner's complaints that his recreation and visitation time was restricted, that he was denied certain personal items, and that he was handcuffed every time he left his cell were "far from extraordinary"). This claim should be dismissed.

Plaintiff complains that he was written up and convicted of the disciplinary violation as punishment for refusing a medical procedure. To the extent that he claims retaliation, Plaintiff has failed to state a claim for which relief can be granted. To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Rosas v. Rodriquez, 2006 WL 1877282, 1 (5th Cir. 2006)(citing Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir.1999)). Moreover, the

9

Fifth Circuit has held that some acts that may be motivated by retaliatory intent, "are so de minimis that they would not **deter** the ordinary person from further exercise of his rights. Such acts **do not rise to the level** of constitutional violations and cannot form the basis of a § 1983 claim." Morris v. Powell, 449 F.3d 682, 686 (5th Cir., 2006). Here, even if Plaintiff had alleged and could establish the four factors for retaliation, his claim would fail. The disciplinary infraction clearly would not deter Plaintiff from further exercise of his rights; in fact, it **did not** deter Plaintiff from refusing "invasive medical treatment" **or** from filing suit against the defendants. Plaintiff refused the medical procedure despite disciplinary sanctions and he filed grievances, federal lawsuits, and proceedings in the Nineteenth Judicial District court. Clearly the alleged retaliatory acts did not deter Plaintiff.

Plaintiff has not alleged the imposition of an atypical and significant hardship in relation to the ordinary incidents of prison life, and it is clear from Plaintiff's exhibits that he is serving only the time ordered pursuant to his original sentence. Plaintiff has not been deterred from exercising his rights, and his claims should be dismissed.

### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's

claims against the defendants be **denied and dismissed with prejudice** for failing to state a claim upon which relief may be granted under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED at Alexandria, Louisiana, this 2nd day of September, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE